**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**TANISHA REIFF,**

                                **Plaintiff,**

**v.**

                                                                **19-CV-6086-HKS**

**ANDREW SAUL, Acting**
**Commissioner of Social Security,**

                                **Defendant.**
_____

**DECISION AND ORDER**

                Plaintiff, Tanisha Reiff, brings this action pursuant to the Social Security

Act ("the Act") seeking review of the final decision of Acting Commissioner of Social

Security (the "Commissioner"), which denied her applications for a period of disability

and disability insurance benefits ("DIB") and supplemental security income ("SSI") under

Titles II and XVI of the Act.  Dkt. No. 1.  This Court has jurisdiction over this action

under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case

by the undersigned pursuant to 28 U.S.C. § 636(c).  Dkt. No. 15.

                Both parties have moved for judgment on the pleadings pursuant to

Federal Rule of Civil Procedure 12(c).  Dkt. Nos. 11, 13.  For the reasons that follow,

Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is GRANTED and

Defendant's Motion for Judgment on the Pleadings (Dkt. No. 13) is DENIED.

## BACKGROUND

On May 6, 2015, Plaintiff protectively filed applications for DIB and SSI with the Social Security Administration ("SSA") alleging disability beginning on April 30, 2014, due to:  Bipolar, Anxiety, Depression, Posttraumatic Stress Disorder ("PTSD"), Vision Problems, and Scoliosis.  Tr.[1]  199-206, 222.  On August 27, 2015, Plaintiff's claims were denied by the SSA at the initial level and she requested review.  Tr. 129-136, 140-141.  On February 28, 2018, Plaintiff appeared with her attorney and testified, along with a vocational expert ("VE") before Administrative Law Judge, Connor O'Brien ("the ALJ").  Tr. 33-102.  On April 20, 2018, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act.  Tr. 12-32.  Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on December 3, 2018.  Tr. 1-6.  Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision.  Dkt. No. 1.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by

---

[1] References to "Tr." are to the administrative record in this matter.  Dkt. No. 8.

substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.      The ALJ's Decision

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above.  First, the ALJ found that Plaintiff met the insured status

requirements of the Act through March 30, 2017.  Tr. 17.  At step one, the ALJ found

Plaintiff had not engaged in substantial gainful activity since April 30, 2014, the alleged

onset date.  *Id.*  At step two, the ALJ found Plaintiff has the following severe

impairments:  Degenerative Disc Disease of the Lumbar Spine; Affective Disorder; and

Anxiety.  *Id.*  Also, at step two, the ALJ found Plaintiff's vision problems constitute a

non-severe impairment.  Tr. 18.  At step three, the ALJ found that these impairments,

alone or in combination, did not meet or medically equal any listings impairment.  Tr. 18-

19.

Next, the ALJ determined Plaintiff retained the RFC to perform a limited

range of sedentary work.[2]  Tr. 19-26. Specifically, Plaintiff requires a sit/stand option

permitting her to change position every sixty minutes for up to five minutes.  Tr. 19.  She

can occasionally stoop, crouch, balance, kneel, crawl, and climb ramps or stairs.  *Id.*

She can adjust to occasional changes in work setting and make simple work-related

decisions.  *Id.*  She can perform simple, unskilled tasks, but cannot interact with the

public or perform tandem or teamwork.  *Id.*  She can fulfill daily quotas or expectations,

but cannot maintain a fast-paced, automated production line pace.  *Id.*  Lastly, the ALJ

concluded Plaintiff requires three brief (less than five minutes) breaks in addition to her

regularly scheduled breaks.  *Id.*

---

[2]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or
carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined
as one which involves sitting, a certain amount of walking and standing is often necessary in
carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally
and other sedentary criteria are met."  20 C.F.R. §§ 416.1567(a) and 416.967(a).

At step four, the ALJ found Plaintiff is unable to perform her past relevant work as a "Fast Food Worker" and "Housekeeper/Cleaner". Tr. 26. At step five the ALJ concluded—based on the VE's testimony in consideration of Plaintiff's age (21 years on alleged disability onset date—a younger individual), education, work experience, and RFC—that Plaintiff was capable of performing other work existing in significant numbers in the national economy. Tr. 27. Specifically, the ALJ found Plaintiff could perform work as a "Document Preparer" and "Addresser." *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act from April 30, 2014, through April 20, 2018. Tr. 28.

## II.   Analysis

Plaintiff argues the ALJ erred in evaluating the medical opinion evidence and that the RFC assessment is not supported by substantial evidence. Dkt. No. 11 at 16. The Commissioner contends the RFC is supported by substantial evidence, including medical evidence and should be affirmed. Dkt. No. 13 at 8.

Plaintiff first argues that the ALJ failed to properly evaluate the medical opinion evidence regarding her mental impairments from her therapist Khadijah Tillman, LCSW-R ("LCSW Tillman"), and consultative examiner Adam Brownfeld, Ph.D. ("Dr. Brownfeld"), in support of the Mental RFC finding. Dkt. No. 11 at 16-20. The ALJ assessed the following limitations in Plaintiff's Mental RFC:

> "She can adjust to occasional changes in work setting and make simple work-related decisions. She can perform simple, unskilled tasks. She cannot interact with the public, and cannot perform tandem or teamwork. She can fulfill daily quotas or expectations, but cannot maintain a fast-

paced, automated, production line pace.  She requires three, additional short, less-than-five-minute breaks in addition to regularly scheduled breaks."

Plaintiff argues that the opinions from LCSW Tillman and Dr. Brownfeld conflict with the Mental RFC assessment and that the ALJ failed to adequately address the conflicting evidence in his decision.  For the reasons set forth below, this Court finds that the ALJ erred in evaluating the opinion evidence of LCSW Tillman, and that this error necessitates remand for further administrative proceedings.[3]

Although a social worker is not an acceptable medical source under the regulations, an ALJ may consider a social worker's opinion as an "other source" opinion to show the severity of a claimant's impairments and how the impairments affect his or her ability to work.  *See Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 398 (W.D.N.Y. 2018); *see also* 20 C.F.R. §§ 404.1513 (a), 416.913(a).  Where, as here, there is no opinion regarding Plaintiff's psychiatric impairments from a treating physician or psychiatrist, "the opinions of consulting and examining physicians, as well as non-acceptable medical sources such as therapists, can 'take on particular significance.'" *Montanez v. Berryhill*, 334 F. Supp. 3d 562, 564 (W.D.N.Y. 2018) (quoting *Dioguardi v. Commissioner*, 445 F.Supp.2d 288, 295 (W.D.N.Y. 2006)).  In such circumstances, an ALJ must consider opinions by each of these sources utilizing the same factors that are employed to evaluate the opinions of treating physicians and must explain the weight

---

[3] Because this Court finds that remand is warranted based on the ALJ's errors in assessing Plaintiff's Mental RFC, the Plaintiff's additional argument concerning the Physical RFC (Dkt. No. 11 at 20) is not addressed.

given to each and the reasons therefor.  *Id.*  In determining how much weight to give

any medical opinion in the record, the ALJ must consider the following:

> (i) The frequency of examination and the length, nature and extent of the
> treatment relationship; (ii) the evidence in support of the … opinion; (iii) the
> consistency of the opinion with the record as a whole; (iv) whether the opinion
> is from a specialist; and (v) other factors brought to the SSA's attention that
> tend to support or contradict the opinion.

*Pike v. Colvin*, 2015 WL 1280484 at *4 (W.D.N.Y. 2015) (quotation and alterations

omitted).  The ALJ's failure to do so constitutes grounds for remand.  *Ferrari v. Saul*,

2020 WL 2542627, *2 (W.D.N.Y 2019).

LCSW Tillman was Plaintiff's primary therapist through Rochester Mental

Health Center ("RMHC") from September 2014 through September 2017.  Tr. 353-74,

656-733, 734-759).  During her initial session with LCSW Tillman, Plaintiff reported a

history of domestic violence, including being beaten by her significant other while

pregnant with her one-year-old child and being raped when she was 14, resulting in the

birth of her oldest child.  Tr. 372.  She reported a history of depression, panic attacks,

and rapid mood changes throughout her treatment at RMHC.   The therapist described

Plaintiff's treatment through RMHC as supportive therapy (primarily with LCSW Tillman

who met with Plaintiff at least fifteen times), and psychiatric medication management,

for which Plaintiff was treated by RMHC providers including:  Muhammad Cheema,

M.D. ("Dr. Cheema"); Kashinath Patil, M.D., ("Dr. Patil"); Magdalena Szklarska-Imiolek,

M.D. ("Dr. Szklarska-Imiolek"); Rohit Madan, M.D. ("Dr. Madan"); and Frances Ann

McCarthy, NP ("NP McCarthy")  . Tr. 731, 360, 666, 670, 681-83, 708, 719.  In

connection with her treatment of Plaintiff, LCSW Tillman completed five formal "Psychological Assessment(s) for Determination of Employability" on Plaintiff's behalf. Each assessment is summarized below.

In February 2015, LCSW Tillman listed depression and mood regulation issues as Plaintiff's chief complaints and explained that because Plaintiff was only in the pre-admission/assessment phase she was not currently prescribed any medications for her impairments.  Tr. 735-36.  She opined Plaintiff would be moderately limited (unable to function 10-25% of the time) in her ability to perform simple and complex tasks independently; maintain attention and concentration for rote tasks; and regularly attend to a routine and maintain a schedule.  Tr. 737.   Lastly, she opined that Plaintiff demonstrated the ability to participate in activities (e.g. work, education, and training) for only fifteen hours per week with reasonable accommodations, for the following six months.  Tr. 737.

In May 2015, LCSW Tillman listed depression, agitation, irritability, and difficulties managing stress and family conflict as the chief complaints of present illness. Tr. 739.  She also noted that Plaintiff had no current medications, but was scheduled to meet with the RMHC psychiatrist on May 11, 2015, and would participate in individual therapy every one-to-two weeks.  Tr. 739-40.  She opined Plaintiff would be moderately limited (unable to function 10-25% of the time in her ability to perform simple and complex tasks independently and maintain attention and concentration for rote tasks. Tr. 741.  She also opined that Plaintiff demonstrated the ability to participate in activities

(e.g. work, education, and training) for only twenty hours per week with reasonable

accommodations and recommended that Plaintiff further her education through the GED

program.  Tr. 741-42.

In November 2015, LCSW Tillman listed depression, mood lability,

occasional suicidal thinking, self-harm behaviors/thoughts, and chronic stress as

Plaintiff's chief complaints of her present illness.  Tr. 743.  She also included Plaintiff's

psychiatric medications including: Tegretol, Zoloft, Lamictal, and Trazadone.  Tr. 744.

The therapist noted Plaintiff was scheduled for weekly treatment, however, she

observed that Plaintiff's condition had not improved as a result of treatment due to her

sporadic attendance and many psychosocial stressors that interfere with her ability to

improve.  *Id.*  She also indicated Plaintiff experienced the following episodes on

occasion due to her psychiatric conditions: loss of job or failure to complete education or

training program; behavior interferes with activities of daily living; and attempted suicide.

*Id.*  The therapist opined Plaintiff would be moderately limited (unable to function 10-

25% of the time) in her capacity to:  follow, understand and remember simple

instructions and directions; perform simple and complex tasks independently; maintain

attention and concentration for rote tasks; and perform low stress and simple tasks.  Tr.

745.  LCSW Tillman also opined Plaintiff would be very limited (unable to function 25%

or more of the time) in her capacity to attend to a routine and maintain a schedule, and

would be limited in her capacity to participate in activities (e.g. work, education, and

training) to only ten hours per week for the next six months, with reasonable

accommodations.  *Id.*  The therapist identified "low stress, flexible scheduling" as necessary reasonable accommodations for Plaintiff's psychiatric condition.  Tr. 746.

In September 2016, LCSW Tillman listed mood instability, anxiety, occasional thoughts of self-harm and unstable interpersonal relationships as chief complaints of Plaintiff's present illness.  Tr. 751.  She indicated Plaintiff was currently not taking psychiatric medications and was pregnant, but noted that Plaintiff's condition improved as a result of bi-weekly therapy.  Tr. 752.  LCSW Tillman noted Plaintiff's occasional experience of the following episodes attributable to her psychiatric conditions: emergency room visits; loss of job or failure to complete education or training program; behavior interfering with activities of daily living; and past suicide attempt.  Tr. 753.  Again, the therapist opined Plaintiff would be moderately limited (unable to function 10-25% of the time) in her capacity to:  perform simple and complex tasks independently; maintain attention and concentration for rote tasks; and perform low stress and simple tasks.  Tr. 754.  Lastly, LCSW Tillman opined Plaintiff would be able to participate in activities (e.g. work, education, and training) for only ten hours per week for the next six months with reasonable accommodations.  Tr. 754-55.

In July 2017, LCSW Tillman prepared a fifth and final Psychological Assessment for Determination of Employability on Plaintiff's behalf.  Tr. 756-59.  She identified Plaintiff's history of post-traumatic stress disorder, history of anxiety and mood symptoms, and history of high family contact and conflict which negatively affects her symptoms.  Tr. 756.  She included Plaintiff's treatment including prescription psychiatric

11

medications Zoloft and Latuda, and she indicated that while Plaintiff should be attending therapy every two-to-three weeks, her attendance throughout her recent pregnancy was very sporadic.  Tr. 757.  The therapist also noted Plaintiff's pending family court issues. *Id.*  She opined Plaintiff was moderately limited (unable to function 10-25% of the time) in her ability to perform simple and complex tasks independently; regularly attend to a routine and maintain a schedule; and in her capacity to perform low stress and simple tasks.  Tr. 758.  Lastly, she opined Plaintiff would be limited to participating in activities (e.g. work, education, and training) for only ten hours per week with reasonable accommodations.  Tr. 758-59

In his decision, the ALJ summarized the therapist's opinions from each the five psychiatric assessments and explained that he accorded "some weight" to the opinions based on LCSW Tillman's treating relationship with Plaintiff and observed that the RFC assessment is "generally consistent" with the opinions of Ms. Tillman.   Tr. 25. The ALJ explained that he assessed limitations for Plaintiff's ability to interact with others, incorporated additional unscheduled break times, and included restrictions against fast-paced, automated production line pace, to adequately address the needs recognized by Ms. Tillman.  *Id.*  The ALJ specifically discounted LCSW Tillman's opinion that Plaintiff would be unable to complete a forty-hour workweek, concluding the opinion was not supported, noting that Plaintiff worked a part-time job with greater demands than the RFC assessment.  *Id.*

For the reasons that follow, this Court finds that the ALJ did not adequately explain his reasoning for rejecting certain conclusions of LCSW Tillman, with respect to Plaintiff's mental limitations.  This court therefore remands this case for further administrative proceedings.  *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (explaining that "[r]emand may be appropriate … where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review").

While the ALJ acknowledged LCSW Tillman's treating relationship with Plaintiff, he failed to adequately consider the evidence in support of the opinion by focusing entirely on the assessments the therapist authored, in exclusion of the multitude of Plaintiff's treatment records with LCSW Tillman and other RMHC providers.

> "Information from "other sources" cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an "acceptable medical source" for this purpose.  However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairments and how they affect the individual's ability to function."

SSR 06-3P, 2006 WL 2329939, at *2.  This ALJ's failure to adequately evaluate the record evidence in support of LCSW Tilllman's opinion is significant where the therapist's opinions are supported not only by her own treatment records, but also by examination findings of RMHC psychiatrists.  For example, Plaintiff was examined by Dr. Cheema on May 11, 2015, for psychiatric medication.  Tr. 360.  The doctor diagnosed[4] bipolar disorder, depressed (Axis I); Rule out personality disorder, NOS

---

[4] "Mental disorders are diagnosed according to the Diagnostic and Statistical Manual of Mental Disorders.  A diagnosis under the fourth edition of this manual, had five parts called axes and

(Axis II); Chronic back pain, scoliosis (Axis III); Moderate (Axis IV); and a GAF score of

60. *Id.*

      While the ALJ acknowledged Plaintiff's difficulty in social, occupational, or

school functioning based on Plaintiff's GAF score of 60 (as assessed by LCSW

Tillman), he specifically discounted the therapist's opinion that Plaintiff would be unable

to complete a forty-hour work week, reasoning only that Plaintiff performed a part-time

job with greater demands than provided for in the RFC assessment.  Tr. 25.  Here, the

ALJ did not describe Plaintiff's part-time work or identify the "greater demands" the job

entailed.  Furthermore, performing part-time work does not—in and of itself—translate

into the capability able to complete a forty-hour workweek on a sustained basis.

Plaintiff's mental health treatment records with LCSW Tillman reflect that Plaintiff

experienced significant difficulties in performing past part-time employment.  For

example, Plaintiff reported to LCSW Tillman that she had obtained a job at a fast-food

restaurant in March 2016.  Tr. 686.  Two months later during therapy with LCSW

Tillman in May 2016, Plaintiff reported difficulties with staff and managers that resulted

in a reduction of her hours.  Tr. 695.  In August 2016, Plaintiff reported ongoing

problems at work involving interactions with customers and fellow employees.  Tr. 700.

On August 26, 2016, Plaintiff reported that she was suspended from work for two weeks

as a result of an argument with a co-worker.  Tr.  705.  The ALJ's failure to consider this

---

each part gave a different type of information about the diagnosis.  Axis I: Clinical Disorders;
Axis II: Personality Disorders; Axis III: General Mental Disorders; Axis IV: Psychosocial and
Environmental Factors; and Axis V: The Global Assessment of Functioning." Nancy
Schimelpfening, medically reviewed by Steven Gans, M.D., The 5 Axes of the DSM-IV Multi-
Axial System (Sept. 22, 2020, last updated on Feb. 4, 2020), http://www.verywellmind.com/five-
axes-of-the-dsm-iv-multi-axial-system-1067053 last accessed on 9/22/2020.

evidence and quite frankly, any other evidence from RMHC in evaluating LCSW

Tillman's opinions renders his conclusion that the RFC assessment accounts for all of

the limitations assessed by LCSW Tillman, unsupported by substantial evidence.


### Dr. Brownfeld

Plaintiff also argues the ALJ erred in evaluating Dr. Brownfeld's opinion by

observing the doctor's opinion was vague where he used the terms "moderate to

marked" in describing Plaintiff's ability to handle stress and then subsequently relying

upon the opinion to accommodate additional limitations in the Mental RFC assessment.

Dkt. No. 11 at 19.  Plaintiff also subsequently contends that the ALJ failed engage in a

proper analysis of Plaintiff's ability to deal with stress, given Dr. Brownfeld's opinion.

Dkt. No. 11 at 22-24.


Dr. Brownfeld performed a consultative psychiatric evaluation of Plaintiff in

July 2015.  Tr. 375-78.  Upon examination, Plaintiff reported anxiety attacks and

flashbacks of being raped at 14 years old, resulting in the birth of her first child.  Tr. 375-

76.  She described symptoms including excessive worrying with palpitations, trembling

and loss of consciousness with anxiety attacks, occuring approximately three to four

times per month.  Tr. 376.  Dr. Brownfeld noted Plaintiff spent her days staying home

caring for her three children, ages 7, 2, and 8 months.  Tr. 375,377.  He diagnosed

Plaintiff with Panic Disorder, Major Depressive Disorder and Agoraphobia.  Tr. 377-78.

He concluded there was no evidence of limitation in Plaintiff's ability to:  follow and

understand simple directions and instructions, perform simple tasks independently,

maintain concentration and attention, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others.  Tr. 377.  However, he concluded Plaintiff has moderate to marked limitations with appropriately dealing with stress and that her psychiatric problems may significantly interfere with her ability to function on a daily basis.  *Id.*

Despite Plaintiff's argument to the contrary, this Court notes that the doctor's use of the terms "moderate and marked" does not automatically preclude the ALJ from relying on the doctor's opinion in support of the RFC assessment.  Dkt. No. 11 at 19.  (citing *Gagovits v. Colvin*, 2016 WL 4491537, *11 (E.D.N.Y. 2016).   Plaintiff's reliance on *Gagovits*, is misplaced.  In *Gagovits*, the Court found that a *non-examining* doctor's opinion—which used the term "moderate" without any additional information or development—was so vague as to render it useless in evaluating the claimant's RFC. 2016 WL 4491537 at *11 (internal quotations and citations omitted).  However, unlike the doctor in *Gagovits* who did not examine the claimant prior to authoring his opinion, here, as the ALJ observed, Dr. Brownfeld's opinion is supported by his clinical findings upon examination of Plaintiff.  *See Evans v. Berryhill*, 2020 WL 1467271, at *5 (W.D.N.Y. 2020) (finding the consultative examiner's opinion with phrases such as "moderate" can serve as an adequate basis for the ALJ's RFC assessment where the opinion was based on the doctor's interview and examination of Plaintiff); see also *Miller v. Berryhill*, 2017 WL 4173357 at *5-6 (W.D.N.Y. 2017) (consultative examiner's opinion that claimant had "moderate to marked" limitations in appropriately dealing with stress did not necessarily mandate a conclusion of disability).  Here, the ALJ acknowledged

Dr. Brownfeld's use of "moderate to marked" to describe Plaintiff's limitations in dealing with stress and concluded that, although the doctor did not further define the terms, the language employed indicated Plaintiff has some limitations in dealing with stress appropriately.  Tr. 25.

However, this Court declines to address whether the ALJ properly evaluated Plaintiff's ability to deal with stress at this time, given the inadequacies in the ALJ's evaluation of LCSW Tillman's opinion, that also identified Plaintiff's difficulties in dealing with stress.  Accordingly, upon remand the ALJ is directed to consider the opinions and evidence from both LCSW Tillman and Dr. Brownfeld in assessing Plaintiff's ability to deal with stress.

## CONCLUSION

For these reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is GRANTED.  Defendant's Motion for Judgment on the Pleadings (Dkt. No. 13) is DENIED.  The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:        Buffalo, New York
              September 23, 2020


                        *S/ H. Kenneth Schroeder, Jr.*
                        **H. KENNETH SCHROEDER, JR.**
                        **United States Magistrate Judge**